LUCY J. WHATLEY, *et al.*, plaintiffs in error, *vs.* ZACHARIAH SLATON, *et al.*, defendants in error.

[NOTE.—Judge HARRISS did not preside in this case.]

1. The Ordinance of the Convention of 1865, "to adjust the equities between parties to contracts," applies in terms to contracts and not to wills.

2. When a Bill in Equity is dismissed, it is out of Court, and no decree can then be rendered upon it.

3. The "instructions" given by the Court to the Executor in this case are proper, but they should have been embodied in a decree.

Bill for Direction, etc.    Demurrer, etc.    Decided by Judge VASON.    Dougherty Superior Court.    June Term, 1867.

JEREMIAH HILLSMAN, as Executor of SARAH ELY, filed his bill containing the following averments :

Sarah Ely died testate on the —— day of ——, 1864. When she executed her will she was supposed to be *in extremis*. The will had been probated and Hillsman had qualified as Executor. When she made the will, she was possessed of considerable land, in cultivation, stock thereon, negroes and other property, worth about $147,840.00 estimated in Confederate money, which was then the currency in the State. Soon after the war ended, (it having resulted "in the conquest of the Confederate States, and in the emancipation of the slaves holden in the Southern States,") and thereby the value of the estate was greatly reduced. The Executor has sold the perishable property and rented out the plantation for

the present year, has sold all the other property, and the value of the real estate, after the payment of all the debts and expenses, will not exceed about ten thousand dollars.

The items of the will were as follows :

1st. Provides that her debts be paid as soon after her death as practicable.

2d. "I desire and direct that all of my property, both real and personal, (except one able-bodied negro fellow hereinafter disposed of,) shall be, as soon as practicable, sold, and the proceeds thereof distributed as hereinafter bequeathed and directed ; and I direct my Executor, in the sale of my negro property, not to divide the families, but to settle families together.

3d. To my nephew, Burwell Green, I give and bequeath one negro man named Lige, of yellow complexion, and five hundred dollars in money.

4th. To my brother, Zachariah Slaton, I give and bequeath five thousand dollars in money.

5th. I give and bequeath to Robert N. Ely five hundred dollars in money.

6th. I give and bequeath to the children of Dr. Jeremiah Hillsman, now living, and seven in number, the sum of two thousand dollars each in money.

7th. I give and bequeath to Mrs. Susan Murrell an amount of money sufficient to buy her a comfortable house, suitable to her condition in life ; the amount of money to be expended I leave to the discretion of my Executors.

8th. The balance of my property, after the payment of the specific legacies above enumerated, I desire and direct to be equally divided *per capita,* and not *per stirpes,* among my following named relatives, share and share alike : Lucy Ann Cothran and her living children, names not recollected, but believed to be five in number ; Jared Pounds, and the living children of Isham Pounds, names not recollected, but believed to be four in number ; and my crippled niece living in Mississippi, formerly Lucy Ann Raines, but since married, and her present name not known ; and John Gamble, now living in Louisiana, and who married my niece Martha Green ; and

Emma Haynes, daughter of Permelius Haynes. And I direct my Executors to make inquiries and find out these persons and notify them of their legacies.

9th. I do hereby nominate and appoint my friends Jeremiah Hillsman and John A. Davis the Executors to this my last will and testament, and hereby clothe them with full power to sell property either at public or private sale, as may be best to carry out this my will."

It was duly executed on the 3d day of November, 1864.

On the 15th day of April, 1865, the Executor paid Burwell Green $5,000.00 in Confederate currency and delivered him Lige, and took his receipt in full of his specific legacy.

He has not paid any of the other specific legacies of money nor bought the house for Mrs. Murrill; he intended to apply one thousand dollars to such purchase, but because of the decreased value of the estate, he is in doubt what to do in this matter, and asks the direction of the Chancellor as to it.

The estate now consists of cash and claims considered good, over and above the payment of the debts and expenses of the administration, of about three thousand dollars and a plantation in the Second District of Lee county, consisting of about six hundred acres, now worth about six thousand dollars, and this is not sufficient to pay the specific bequests in good currency.

It is pretended by some of the parties, and particularly by the residuary legatees, that it was the intention of testator that all of said bequests should be paid in Confederate currency, then worth but little in comparison with specie, and that the specific bequests should be paid in present currency equal in amount to the value of such bequests in good money at the date of the will, and not otherwise.

On the other hand, Robert N. Ely and complainant's children claim that, whatever may have been testatrix's intention as to the other specific bequests, she did intend that their legacies should be paid in good money, for that on the 20th February, 1855, when the currency was at par, she made another will, (which was revoked by this last one,) in which she made the same bequests to them as in this one, and did not in the interim change her mind in this regard.

The Executor feared that he would be embroiled in vexatious litigation, and might involve himself in personal liability by attempting to move in the matter, and to avoid this he·prayed instructions and direction, and that all the parties named, by themselves or their representatives, should appear, and have all his accounts audited and all of said matters settled, and for general relief.

To this bill Lucy J. Whatley filed her answer.

She stated that she was the niece of testatrix, called in the will Lucy Ann Cothran; her maiden name was Pounds—it was changed to Coats, then to Cothran, and then to Whatley, by marriage. She has five living children, named * * * all minors; she is their only surviving parent, and prays that Samuel D. Irvin, Esq., be appointed their guardian *ad litem*. She denied that the will contained any specific bequest except that to Burwell Green, (which last had been paid); the other persons supposed to be entitled to specific legacies, are not so entitled. It is manifest from the will that they should take but a small part of testatrix's property, and that 12-13ths or more should go to the residuary legatees, of whom she and her children constituted six-fourteenths.

She plead, in the answer, that under the will (if testatrix was competent to make a will), she intended that all the legatees named therein should be paid in Confederate money, which was at the date of the will the only currency of the country, and had been for three or four years before that, and there was no reasonable expectation at that time of a different currency; that all of the legacies are in their nature general, and should abate proportionally in case of a deficiency of assets; that her intention must be ascertained from the will and the surrounding circumstances; that estimating her estate at a large amount, she intended a small part only should go to the specific legatees, and the mass of it to the residuary legatees; Burwell Green being paid, Zachariah Slaton, Robt. N. Ely, and the children of Jeremiah Hillsman, should receive in good currency what their bequests in Confederate money was worth in good currency; that the loss by emancipation should be borne equally by all—that is, one-twentieth

Whatley, *et al. vs.* Slaton, *et al.*

should be charged to the specific legatees, and nineteen-twentieths to the residuary legatees, and this same rule of abatement should be applied to the legacy of Susan Murrill.

Robert N. Ely and Zachariah Slaton filed a demurrer, averring in substance that there was no ambiguity in the will, it should be followed according to its terms, and for these reasons there is no equity in the bill.

During the argument the Court refused to hear the answer and plea filed in behalf of said residuary legatees, objection having been made to the hearing of them by the demurrants.

After argument, the Court allowed the Executor his costs on account of said bill and litigation thereon, and dismissed the bill "on the following conditions and directions":

1st. That the Executor is hereby instructed, ordered and directed to sell the property of the testatrix, reduce the whole to money, and then to pay off, *First*—the debts of testatrix and necessary expenses of the administration of said estate and the execution of said will. *Second*—That from the proceeds of the balance of the estate, thus ascertained, the Executor pay off the unpaid general or specific legacies contained in said will; that is to say, $200.00 each to the children of Jeremiah Hillsman named in said will, $5,000.00 to Zachariah Slaton, and provide a home for Mrs. Murrill as directed by the will, in the discretion of the Executor, and within the sense of the testatrix, (it being understood that the other general or specific legatee, Burwell Green, has been satisfied,) and that after the payment or satisfaction of said general legacies, if there be sufficient assets in the hands of the Executor for that purpose, and if any insufficiency, that then the same abate *pro rata;* that the balance then left in the hands of the Executor be divided and distributed to the residuary legatees equally, according to the instructions in said will.

Samuel D. Irvin, as solicitor for the residuary legatees, filed a bill of exceptions, assigning for error—

1st. The refusal to hear the answer and pleas aforesaid.

2d. Sustaining the demurrer.

3d. The giving of the directions and orders aforesaid.

Counsel consented that the specific legatees should be made the defendants in error, (in lieu of the Executor, and that the case be considered fully,) so as to settle the matters between the two classes of legatees.

SAMUEL D. IRVIN, for plaintiffs in error.

LYON, DEGRAFFENREID & SHORTER, and ROBERT N. ELY, for defendants in error.

WALKER, J.

1. A careful examination of the ordinance of 1865, " to adjust the equities between parties to contracts made, but not executed," etc., satisfies us that it was not intended to include wills. The caption embraces three objects, all in reference to contracts, and each section applies to one of these objects. " Contracts " was the subject under consideration, and while possibly there are cases where the ordinance might well be applied to wills, we are satisfied such was not the intention. By no fair rule of interpretation can the language be enlarged so as to embrace wills.

2. The Court sustained the demurrer and dismissed the bill, and then proceeded to direct the Executor how to administer the estate. When the bill was dismissed there was no case in Court, and the Court had no authority to make a decree in a case which he had turned out of Court. In the very act of dismissing the bill, he proceeds to give the representative the instructions for which the bill was filed, thus showing that the bill was properly filed, and that the demurrer ought not to have been sustained and the bill dismissed.

3. We approve the instructions given to the Executor; the error into which the Court fell was in giving such instructions in a case which had just been dismissed, and consequently had no standing in Court. It had passed out of the Judge's jurisdiction. We reverse the judgment, and direct that the case be reinstated, and the "instructions" be embodied in a decree, so as to be the judgment of the Chancellor upon the facts and law of the case.

Judgment reversed.